UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| JERMALLE BROWN, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. 22-cv-3271-JBM |
| | ) |
| BRITTANY GREENE, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## MERIT REVIEW ORDER

Plaintiff, proceeding *pro se* and incarcerated at Western Illinois Correctional Center ("Western"), files a Complaint under 42 U.S.C. § 1983 alleging violations of his constitutional rights. (Doc. 1). The case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the Complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 F. App'x 588, 589 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## ALLEGATIONS

Plaintiff files suit against Warden Brittany Greene, Assistant Warden John/Jane Doe, Lieutenant Manton, Sergeant Manton, Margaret Madole, Illinois Department of Corrections ("IDOC") Director Rob Jeffreys, and Correctional Officer Burge.

1

Plaintiff states that the Warden at Western started "early dayroom" to ensure everyone had a chance to use the phone. Plaintiff alleges that on September 27, 2021, a female correctional officer let him and three other inmates out of their cells for "early dayroom." Shortly thereafter, Defendants Sergeant Manton and correctional officer Burge asked why Plaintiff and the other inmates were out of their cells. Plaintiff attempted to explain, but Sergeant Manton directed Plaintiff to lock up. Plaintiff was stunned and continued explaining why he was out of his cell. Sergeant Manton directed Plaintiff to cuff up, grabbed his mace, and roughly placed handcuffs on Plaintiff's wrists. While Defendants Sergeant Manton and Burge escorted Plaintiff to segregation, Manton allegedly twisted the cuffs so tightly that Plaintiff could barely walk. Plaintiff alleges that he begged Burge to stop Manton, but Burge did nothing. Plaintiff could feel the cuffs cutting him and could not move his hands while Manton squeezed the cuffs. Plaintiff pleaded with Manton and Burge, but Manton allegedly continued squeezing the cuffs as tightly as they would go. When Plaintiff was placed in the bullpen, Plaintiff asked Defendants Manton and Burge for medical attention, but he did not receive any treatment. While in segregation, Plaintiff's wrist was bleeding and his hand started to swell.

Sergeant Manton allegedly told Plaintiff not to worry about beating the ticket because his brother, Lieutenant Manton, would be the hearing officer. An Adjustment Committee hearing was held a couple days later. Plaintiff asked Defendant Lieutenant Manton if he was supposed to excuse himself because he was Sergeant Manton's brother, and Sergeant Manton wrote the ticket. Lieutenant Manton allegedly told Plaintiff to submit a grievance, but to be careful because his cousin might hear the grievance. Plaintiff alleges that Defendant Lieutenant Manton violated his procedural due process rights because he did not excuse himself from the hearing based on his

relationship to Sergeant Manton. Plaintiff alleges that he was entitled to an impartial Adjustment Committee. Plaintiff was found guilty of all charges.

Plaintiff alleges that his discomfort from the cuffs during the Adjustment Committee hearing must have been obvious because Defendant Lieutenant Manton asked if his wrist was alright. Plaintiff told him his hand was swollen and he could not move some of his fingers. Rather than providing medical treatment, Lieutenant Manton advised Plaintiff to write a grievance. As a result, Plaintiff alleges that Lieutenant Manton was deliberately indifferent to his medical needs.

While he was in segregation, Plaintiff alleges that he showed his wound and swollen hands to Defendants Warden Greene and Assistant Warden John/Jane Doe on at least six occasions when they did rounds. Defendant Greene allegedly told Plaintiff that he would receive medical attention. Defendant Greene also told Plaintiff they had received his letters and that he did not need to continue writing them. On October 20, 2021, Plaintiff received an x-ray but never received anything for the pain.

Plaintiff alleges that Defendant Madole, who was a member of the Administrative Review Board, and Defendant Jeffreys violated his due process rights and were deliberately indifferent to his medical needs. Plaintiff claims that they signed off on his grievances regarding his need for medical treatment and Lieutenant Manton's involvement in the Adjustment Committee hearing and allowed his disciplinary punishment even though it was a violation of his due process rights.

Finally, Plaintiff also alleges that Defendant Sergeant Manton was working segregation, came to his cell, and told him he was not getting his food trays or medical treatment.

ANALYSIS

I.     **Excessive Force and Failure to Intervene**

Regarding the excessive force claim against Defendant Sergeant Manton, Plaintiff must show that the force was applied maliciously and sadistically, not in a good faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). This is so, as prison officials considering the use of force must balance the threat presented to inmates and prison officials against the possible harm to the inmate against whom the force is to be used. *Id.* at 320. "[W]hile a plaintiff need not demonstrate a significant injury to state a claim for excessive force under the Eighth Amendment, 'a claim ordinarily cannot be predicated on a *de minimis* use of physical force.'" *Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001) (internal citations omitted). The Court must balance the amount of the force used against the need for the force. If no force is necessary, even *de minimis* force may not be used. *Reid v. Melvin*, 695 F. App'x 982, 983-84 (7th Cir. 2017).

Regarding the failure to intervene claim against Defendant Burge, Plaintiff must allege (i) the defendant knew of the unconstitutional conduct; (ii) the defendant had a realistic opportunity to prevent the harm; (iii) the defendant failed to take reasonable steps to prevent the harm; and (iv) the plaintiff suffered harm as a result. *Yang v. Hardin,* 37 F.3d 282, 285 (7th Cir. 1994).

While Defendants Sergeant Manton and Burge escorted Plaintiff to segregation on September 27, 2021, Sergeant Manton allegedly twisted the handcuffs so tightly that Plaintiff could barely walk. Plaintiff could feel the cuffs cutting him and could not move his hands while Sergeant Manton was squeezing the cuffs. Plaintiff alleges that he begged Defendant Burge to stop Defendant Sergeant Manton from squeezing the handcuffs; Burge did nothing to stop Sergeant Manton; and Sergeant Manton kept squeezing the cuffs. As a result, Plaintiff alleges that he

sustained an open wound, his hands were swollen, and he could not move some of his fingers. Based on Plaintiff's allegations, the Court finds that Plaintiff has stated an excessive force claim against Defendant Sergeant Manton and a failure to intervene claim against Defendant Burge.

## II.     Deliberate Indifference

Plaintiff also claims that all the Defendants were deliberately indifferent to his serious medical needs. It is well established that deliberate indifference to a serious medical need is actionable as a violation of the Eighth Amendment. *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). A claim of deliberate indifference contains both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

To satisfy the objective component, a prisoner must demonstrate that his medical condition is "objectively, sufficiently serious." *Id*. An objectively serious medical condition is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Hayes*, 546 F.3d at 522.

To satisfy the subjective component, the inmate must demonstrate that the prison official acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. The official must know of and disregard an excessive risk to the inmate's health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. The prisoner must show that the defendant engaged in more than negligence and that the defendant's conduct approached intentional wrongdoing or criminal recklessness. *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (citing *Farmer*, 511 U.S. at 837). The Court will analyze Plaintiff's allegations against each Defendant.

### A. Defendants Sergeant Manton and Burge

When Sergeant Manton and correctional officer Burge escorted Plaintiff to segregation on September 27, 2021, and placed him in the bullpen, Plaintiff allegedly asked Defendants Manton and Burge for medical attention, but he did not receive any treatment. While in segregation, Plaintiff's wrist was bleeding and his hand started to swell.

Plaintiff also alleges that Defendant Sergeant Manton was working in the segregation unit, came to Plaintiff's cell, and told him since he "could not let it go," he was not getting his food trays or medical treatment. It is unclear when this occurred.

Based on Plaintiff's allegations, the Court finds that he has stated a plausible Eighth Amendment deliberate indifference claim against Defendant Sergeant Manton. The allegations against Defendant Burge, however, are too sparse, as it appears that Burge did not have further contact with Plaintiff after he was placed in segregation. The deliberate indifference claim against Defendant Burge is DISMISSED.

### B. Defendant Lieutenant Manton

A couple days after he was placed in segregation, Plaintiff had a disciplinary hearing before the Adjustment Committee, which included Defendant Lieutenant Manton. During the hearing, Manton asked how Plaintiff's wrist was. Plaintiff told him his hand was swollen and he could not move some of his fingers. Manton did not immediately obtain medical care for Plaintiff but advised him to submit a grievance. These allegations are insufficient to establish that Lieutenant Manton possessed the culpable state of mind required for a deliberate indifference claim. The deliberate indifference claim against Defendant Lieutenant Manton is DISMISSED.

### C. Defendants Madole and Jeffreys

Plaintiff alleges that Defendant Madole, who was part of the Administrative Review Board, and IDOC Director Jeffreys were deliberately indifferent to his medical needs because they both signed off on his answer to his grievances regarding his need for medical attention and failed to ensure he received treatment.

Plaintiff alleges that he is suing Defendants Madole and Jeffreys in their individual and official capacities. However, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Vill. of Oak Park,* 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). There is no *respondeat superior* under § 1983. *Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992). If state prison officials are named, they must be named in their individual capacities, and Plaintiff must allege that the official personally participated in the deprivation or was deliberately reckless as to the misconduct of subordinates or was aware and condoned, acquiesced, or turned a blind eye to it. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). State officials acting in their official capacities are not "persons" amenable to suit under § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

Merely "signing off" on an answer to Plaintiff's grievances is insufficient to establish Madole's and Jeffreys' personal involvement. *See Diaz v. McBride*, 1994 WL 750707, at *4 (N.D. Ind. Nov. 30, 1994) (holding that a plaintiff could not establish personal involvement and subject a prison official to liability under § 1983, merely by sending the official various letters or grievances complaining about the actions or conduct of subordinates). The deliberate indifference claim against Defendants Madole and Jeffreys is DISMISSED.

### D. Defendants Greene and John/Jane Doe

Plaintiff allegedly showed his wound and swollen hands to Defendants Warden Greene and Assistant Warden John/Jane Doe on at least six occasions when they did rounds in the segregation unit. Defendant Greene told Plaintiff they received his letters and he did not need to continue writing them. Defendant Greene also told Plaintiff he would receive medical treatment. Plaintiff states that he underwent an x-ray on October 20, 2021, but he never received any pain medication.

The warden of each prison is entitled to relegate the provision of good medical care to the prison's medical staff. *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). There is no *respondeat superior* liability under § 1983. If state prison officials are named, they must be named in their individual capacities, and Plaintiff must allege that the official personally participated in the deprivation or was deliberately reckless as to the misconduct of subordinates or was aware and condoned, acquiesced, or turned a blind eye to it. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001); *see also Glasco v. Prulhiere*, 2009 WL 54298, at *1 (S.D. Ind. Jan. 8, 2009) ("[e]ven if [plaintiff] wrote letters to these defendants, this fact alone is insufficient to support recovery from supervisory defendants."). Plaintiff's allegations against Greene and Doe are insufficient, and the deliberate indifference claim against Defendants Greene and Doe is DISMISSED WITH PREJUDICE.

### III. Due Process

Plaintiff also alleges that Defendants Lieutenant Manton, Madole, and Jeffreys violated his due process rights. The review of a procedural due process claim requires a two-part analysis: whether the plaintiff was deprived of a protected liberty or property interest, and if so, what process was due. *Hamlin v. Vaudenberg*, 95 F.3d 580, 584 (7th Cir. 1996). In other words, if a

constitutional right is identified, then procedural due process must be provided. *Brokaw v. Mercer Cnty.,* 235 F.3d 1000, 1020 (7th Cir. 2000). A due process violation may be implicated if "the defendants deprived [plaintiff] of a liberty interest by imposing an 'atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *McCoy v. Atherton*, 818 F. App'x 538, 541 (7th Cir. 2020) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). The Court must examine not just the severity, but the duration of the complained-of conditions. *Dixon v. Godinez*, 114 F.3d 640, 644 (7th Cir. 1997); *see also Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009) (characterizing up to 90 days in segregation a relatively short period, depending on the conditions imposed).

Here, Plaintiff alleges that Defendant Sergeant Manton issued a ticket on September 27, 2021, and a disciplinary hearing was held a couple days later. Plaintiff claims that he was deprived of an impartial committee in violation of IDOC regulations codified as 20 Ill. Admin. Code § 504.80(d) because Defendant Lieutenant Manton, Sergeant Manton's brother, was a member of the Adjustment Committee and refused to recuse himself. Plaintiff alleges that he was found guilty of the disciplinary violation and, according to attached exhibits, the Adjustment Committee recommended 2 months C grade, 28 days segregation, 1 month phone restriction, 1 month dayroom restriction, 1 month yard restriction, housing unit change, and assignment change, which were all approved by Warden Greene, except segregation was reduced to 21 days. Plaintiff does not allege that these disciplinary actions were carried out. As currently pled, Plaintiff's allegations are insufficient to state a due process claim. *See Lekas v. Briley*, 405 F.3d 610, 613 (7th Cir. 2005) (90 days in segregation with loss of contact visits, loss of telephone and commissary privileges, and the inability to participate in programs did not implicate protected liberty interests); *see also Williams v. Brown*, 849 F. App'x 154, 156 (7th Cir. 2021) (only lengthy period of segregation and

9

harsh conditions will violate due process). The discipline imposed was not excessive to amount to a due process violation based on Seventh Circuit caselaw. Therefore, Plaintiff's due process claim against Defendant Lieutenant Manton is DISMISSED WITH PREJUDICE.

Plaintiff also alleges that Defendants Madole and Jeffreys violated his due process rights because "Defendants both signed off on Plaintiff['s] answer to his grievances acknowledging that they knew that Defendant [Manton's] brother heard Plaintiff['s] ticket, but still allowed the disciplinary punishment even though it was a violation of Plaintiff's due process [rights]." (Doc. 1 at 8). As stated above, signing off on grievances is insufficient to establish personal involvement. Plaintiff's due process claim against Defendants Madole and Jeffreys is also DISMISSED WITH PREJUDICE.

### IV. Food Trays

Finally, Plaintiff claims that Defendant Sergeant Manton "made sure Plaintiff did not receive any food trays" while he was working in segregation. *Id.* at 7. Defendant Manton allegedly told Plaintiff that he was not getting his food trays because Plaintiff "couldn't let it go." *Id.* at 6. The deliberate indifference claim against Defendant Sergeant Manton will proceed, pending a more fully developed record.

**IT IS THEREFORE ORDERED:**

1) According to the Court's Merit Review of Plaintiff's Complaint under 28 U.S.C. § 1915A, Plaintiff has stated Eighth Amendment claims against Defendant Sergeant Manton for allegedly using excessive force against Plaintiff while escorting him to segregation on September 27, 2021, and against Defendant Burge for failing to intervene. Plaintiff has also stated an Eighth Amendment claim for deliberate indifference against Defendant Sergeant Manton for denying Plaintiff medical care and his food trays while Plaintiff was in segregation. Additional claims shall

not be included in the case above, except in the Court's discretion on motion by a party for good cause shown under Federal Rule of Civil Procedure 15.

    2)       Defendants Brittany Greene, John/Jane Doe, Lieutenant Manton, Margaret Madole, and Rob Jeffreys are DISMISSED with prejudice for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915A. The Clerk is DIRECTED to terminate them as parties.

    3)       This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendants before filing any motions to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.

    4)       The Court will attempt service on Defendants by mailing a waiver of service. If Defendants fail to sign and return a waiver of service to the Clerk within 30 days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on Defendants and will require Defendants to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

    5)       Defendants shall file an answer within 60 days of the date the Clerk sends the waiver of service. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' positions. The Court does not rule on the merits of those positions unless and until Defendants file a motion. Therefore, no response to the answer is necessary or will be considered. If Defendants have not filed an answer or appeared through counsel within 90 days of the entry of this Order, Plaintiff may file a motion

requesting the status of service. After Defendants have been served, the Court will enter a scheduling order setting discovery and dispositive motion deadlines.

6) If Defendants no longer work at the address Plaintiff provided, the entity for whom Defendants worked while at that address shall submit to the Clerk Defendants' current work address, or, if not known, Defendants' forwarding address. This information shall be used only for effectuating service. Documentation of Defendants' forwarding address shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

7) This District uses electronic filing, which means that after Defendants' counsel has filed an appearance, Defendants' counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to Defendants' counsel copies of motions and other documents that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.

8) Counsel for Defendants is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Counsel for Defendants shall arrange the time for the deposition.

9) Plaintiff shall be provided a copy of all pertinent medical records upon request.

10) Within 10 days of receiving from defense counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to defense counsel. The

Clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

11) Plaintiff shall immediately inform the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

12) The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

ENTERED: 4/17/2023

s/ Joe Billy McDade
Joe Billy McDade
United States District Judge
